CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

July 24, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SHAVIS HOLLOMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25-cv-00405 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WARDEN D. ANDERSON, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Shavis Holloman, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against Defendants Warden D. Anderson, Major T. Hall, L. Collins Lieutenant M. Barten, and Officer Watkins. (*See* Compl. [ECF No. 1].) This matter is before the court on a motion to dismiss by Defendants Anderson, Hall, Collins, and Barten (the "Moving Defendants").[1] (ECF No. 22). For the following reasons, the court will grant the motion.

## I.      BACKGROUND

This matter stems from events that allegedly occurred while Holloman was incarcerated at the Red Onion State Prison ("Red Onion") in Pound, Virginia. (Compl. at 1.) Anderson is the warden at Red Onion and Hall is a major. (*Id.* at 2.) Collins is the unit manager of the B-Building, and Barten is a correctional officer at the prison holding the rank of lieutenant. (*Id.*) During the relevant time period, Watkins was an officer-in-training at Red Onion. (*Id.*) Holloman makes the following factual allegations in his complaint, which the court accepts as true when analyzing the motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017).

---

[1] Although Watkins executed a waiver of service (*see* ECF No. 21), she did not file a responsive pleading or join in the motion to dismiss. (*See* ECF No. 23 at 1 n.1 (noting that "[t]he Office of the Attorney General does not represent Defendant Watkins.").) Holloman has not moved for entry of default against Watkins.

Holloman alleges that on November 26, 2024, and again on December 4, 2024, Watkins engaged in sexual misconduct toward him at Red Onion. (*See* Compl. at 3–7.) Holloman further alleges that, on December 4, Collins and Barten permitted Watkins to monitor Holloman and another innate unsupervised.[2] (*Id.* at 4–7.)  According to Holloman, when he alerted Defendants to Watkins' alleged sexual misconduct, they "encourage[d] Holloman not to mention [it] because their jobs would be on the line and that wouldn't be good."[3] (*Id.* at 7.) Holloman further claims that on December 9, 2024, he met with certain Red Onion officials—including Barten—for a "debrief" on the issue of Watkins's alleged sexual misconduct. (*Id.* at 7–8.) After this meeting, Watkins was allegedly "walked off" Red Onion's premises. (*Id.* at 8.) According to Holloman, subsequent investigation into Watkins's alleged sexual misconduct resulted in a final investigation report which found Holloman's allegations to be substantiated.[4] (*Id.*) Despite this, Watkins was allegedly "rehired" as a correctional officer at another prisoner—Wallens Ridge State Prison in Big Stone Gap, Virginia. (*See id.*)

On or about May 22, 2025, Holloman allegedly "stopped" Collins while the officer was conducting "his daily rounds" to request that he contact the "Intelligen[ce] Department" "to ensure that [Holloman] had all the necessary documents" to pursue claims against Watkins. (*Id.* at 13.) Collins allegedly responded by telling Holloman "not to ask [Collins] shit about [the issue] and that [Holloman] was going to fuck around and get locked-up with a[n] institutional

---

[2] Although Watkins was presumably also unsupervised during the November 26th occasion, Holloman does not appear to assert any claims against Barten and Collins arising out of that occasion. (*See* Compl. at 3 –12.)

[3] Holloman alleges that Watkins, as an officer-in-training, had not attended programming at the Officers' Training Academy and "wasn't suppose[d] to be . . . around inmates at the time because she had no training." (Compl. at 9.) He further alleges that Barten and Collins were Watkins' supervisors on December 4, 2024. (*Id.*)

[4] An attachment to Holloman's complaint substantiates this allegation. (*See* ECF No. 1-2 at 1.)

charge and moved out of the building." (*Id.*) Holloman claims that at the time, he had not received any disciplinary charges in the then-preceding sixteen months and was housed in a single-occupancy cell in regular population with a "pod feeding job." (*Id.*)

Holloman claims that on May 27, 2025, an unnamed "booth officer" stationed at Holloman's pod discharged his "gun" on an inmate who was getting out of the shower. (*Id.* at 13–14.) After several other officers arrived on the scene, an inmate who was "slow getting off the . . . phone" was pepper sprayed, and some of the resulting chemical agents landed on Holloman's eyes and nose.[5] (*Id.*) Shortly thereafter, Collins allegedly sent two officers to Holloman's cell door to ask him to clean up the pepper spray. (*Id.*) According to Holloman, he tried to explain to the officers that "he was having a hard time breathing" and that the pepper spray "was messing with his sinus[es]." (*Id.*) Holloman also allegedly told the officers that he was about to pass out food trays to other innates and could not "have [pepper spray] on his hands and clothes [while] touching [their] food." (*Id.*) Additionally, Holloman claims to have told the officers that he had no experience or requisite skill to clean up the pepper spray. (*Id.*) After the officers reported back to Collins, he allegedly instructed them to write Holloman an institutional charge for refusing to work. (*Id.* at 13 –14.) As a result, Holloman was allegedly moved out of his cell to another side of the building. (*Id.* at 14.) According to Holloman,

---

[5] Holloman says he advised an unnamed nurse at the time that "he had really bad allergies and needed some fresh air because he was having a hard time breathing." (Compl. at 14.) Holloman further alleges that the nurse said "okay," but walked away and did not report Holloman's condition to correctional officers, which he claims constituted "deliberate indifference to [his] medical need[s]." (*Id.*) But Holloman did not name any nurses as Defendants, and he does not appear to bring a deliberate indifference claim arising out of these allegations.

although three other inmates also refused to clean up the pepper spray, he was the only one punished for it.[6] (*Id.*)

Holloman's complaint was docketed on June 16, 2025. (*See* ECF No. 1.) He asserts two Eighth Amendment claims against Watkins based on her alleged sexual misconduct as well as Eighth Amendment failure-to-protect claims against Barten and Collins. (*Id.* at 3–12.) Holloman also asserts a First Amendment retaliation claim against Collins. (*Id.* at 13–15.) As for Anderson and Hall, Holloman asserts what the court construes as supervisory liability claims against these Defendants. (*Id.* at 16.)

On January 26, 2026, the Moving Defendants filed their motion to dismiss. (ECF No. 22) Holloman filed a response in opposition (ECF No. 30), and the Moving Defendants did not file a reply. Accordingly, the motion to dismiss is ripe for disposition.

## II.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not

---

[6] Holloman also alleges that Barten told him "that he needed to law low because . . . Collins was out to get him." (Compl. at 15.)

do." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). At bottom, the court "must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).

Pleadings filed by *pro se* litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A *pro se* complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### III.    ANALYSIS

Holloman is pursuing his claims against Defendants under 42 U.S.C. § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his rights under the Constitution or laws of the United States. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). As discussed, Holloman asserts Eighth Amendment failure-to-protect claims against Barten and Collins, a First Amendment retaliation claim against Collins, and supervisory liability claims against Anderson and Hall. The court addresses each of these claims in turn.

#### A. Failure-to-Protect

Holloman asserts failure-to-protect claims against Barten and Collins based on their failure to supervise Watkins on December 4, 2024, when she allegedly engaged in sexual misconduct toward Holloman. (*See* Compl. at 9–12.) Under the Eighth Amendment, prison officials "have a duty to protect inmates from a substantial and known risk of harm," including harm inflicted by others. *Cox v. Quinn*, 828 F.3d 227, 239 (4th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). To state a failure-to-protect claim under the Eighth

- 5 -

Amendment, an inmate must allege facts sufficient to satisfy two elements. First, the inmate must establish that he suffered "a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury.'" *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) (quoting *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010)). Second, the inmate must show that the defendant had a "sufficiently culpable state of mind," which, in this context, means that the defendant acted with "deliberate indifference to inmate health or safety." *Id.* at 346–47 (quoting *Farmer*, 511 U.S. at 834).

Deliberate indifference is "a very high standard" that requires more than alleged "mere negligence." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999), *abrogated on other grounds as recognized by Short v. Hartman*, 87 F.4th 593, 609–10 (4th Cir. 2023)). "A plaintiff establishes 'deliberate indifference' by showing that the prison official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Danser*, 772 F.3d at 346 (alterations in original) (quoting *Farmer*, 511 U.S. at 837). Importantly, "the official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). "It not enough that [the official] should have recognized it"; the official "actually must have perceived the risk." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). "Thus, 'an official's failure to alleviate a significant risk that [the official] should have perceived but did not' will not give rise to a claim under the Eighth Amendment." *Danser*, 772 F.3d at 347 (quoting *Farmer*, 511 U.S. at 838).

Assuming that Watkins's sexual misconduct toward Holloman satisfies the first element of his failure-to-protect claims, Holloman has failed to allege sufficient facts to show the second element. Holloman's complaint is devoid of facts that would show that Barten or

Collins knew or should have known that Watkins was likely to engage in sexual misconduct if left unsupervised on December 4, 2024. At worst, Holloman's allegations might show that Barten and Collins were negligent in failing to supervise Watkins on December 4. But "[a] 'showing of mere negligence' will not suffice" to show deliberate indifference. *Danser*, 772 F.3d at 347 (quoting *Grayson*, 195 F.3d at 695). Accordingly, Holloman's failure-to-protect claims against Barten and Collins are insufficiently alleged and will be dismissed.[7]

### B. Retaliation

Holloman asserts a First Amendment retaliation claim against Collins based on the events of May 22, 2025, and May 27, 2025. (*See* Compl. at 13–15.) To state a claim for retaliation, Holloman must allege facts supporting a reasonable inference that (1) he engaged in activity protected under the First Amendment, (2) Collins took some action that adversely affected his First Amendment rights, and (3) a causal relationship exists between Holloman's protected activity and Collins's challenged conduct. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017). "Claims of retaliation by prisoners must 'be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.'" *Hoye v. Gilmore*, 691 F. App'x 764, 765 (4th Cir. 2017) (per curiam) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

---

[7] As noted, Holloman alleges that, after they were notified of Watkins' alleged sexual misconduct, Barten and Collins "encourage[d] Holloman not to mention [it] because their jobs would be on the line and that wouldn't be good." (Compl. at 7.) Liberally construed, this allegation could be read to assert separate failure-to-protect claims against Barten and Collins based on their failure to adequately respond to Watkins's conduct after the fact. But if Holloman intended to raise such claims, they fail. *See Carter v. Collins*, No. 7:22-cv-00025, 2023 WL 3871718, at *2 (W.D. Va. June 7, 2023) ("The alleged failure to take action after an alleged constitutional violation does not cause or contribute to such violation or otherwise provide a basis for liability" (citing *Schofield v. Magrey*, No. 3:12-cv-00544, 2015 WL 521418, at *11 (D. Conn. Feb. 9, 2015))).

The Moving Defendants concede—and the court agrees—that Holloman has satisfied the first element of his retaliation claim, as he "clearly has a First Amendment right to sue regarding [his] alleged sexual abuse." (ECF No. 23 at 9.) But based on his factual allegations, Holloman has failed to allege facts that would satisfy the second element of his retaliation claim against Collins. As noted, Holloman alleges that Collins had other officers write him an institutional charge for refusing to work, which resulted in him being moved out of his single-occupancy cell to another side of the building. (*See* Compl. at 13–14.) Although there appears to be a dearth of in-circuit caselaw on this point, courts outside the Fourth Circuit have held that a retaliation claim based on an inmate's mere transfer "from one cell to another where there is no pled material difference would not survive a motion to dismiss." *Walker v. Sellers*, No. 21-660, 2024 WL 943448, at *3 (E.D. Pa. Mar. 5, 2024).

Upon review, Holloman identifies no material difference between his prior and subsequent cells. (*See* generally Compl.) Indeed, although Hollomon notes that his prior cell was single occupancy and in a regular population pod, he does not allege that his subsequent cell was any different. (*See id.*); *see also Verbanik v. Harlow*, 512 F. App'x 120, 122 (3d Cir. 2013) (per curiam) (no actionable retaliation claim where inmate claimed he was "transferred to a less desirous cell" but "did not demonstrate that the living conditions he endured constituted an adverse action"). Without more, the court cannot say that Holloman's alleged transfer between cells "would likely deter a person of ordinary firmness from the exercise of First Amendment rights," as required to satisfy the second element of a retaliation claim. *Hoye*, 691 F. App'x at 765 (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474,

500 (4th Cir. 2005)). Accordingly, Holloman's First Amendment retaliation claim against Collins will be dismissed.[8]

## C. Supervisory Liability

As noted, Holloman also asserts claims against Anderson, the warden at Red Onion, and Hall, a major at the prison. (*See* Compl. at 16.) As to Anderson, Holloman alleges that, as "the overseer" of Red Onion, Anderson hired Watkins and shares responsibility for her alleged sexual misconduct toward Holloman. (*Id.*) As to Hall, Holloman alleges that he is responsible for the security and operation of Red Onion and is therefore "suppose[d] to make sure all certified offices know how to conduct their jobs properly." (*Id.*) In making these allegations, the court understands Holloman to assert supervisory liability claims against Anderson and Hall.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Iqbal*, 556 U.S. at 676. Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* To state a claim of supervisory liability under § 1983, a plaintiff must allege facts sufficient to show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

---

[8] Having concluded that Holloman has failed to show the second element of his retaliation claim against Collins, the court need not—and will not—address whether Holloman can satisfy the third element of such a claim.

*Wall v. Clarke*, No. 7:19-cv-00260, 2021 WL 5444754, at \*4 (W.D. Va. Nov. 22, 2021) (quoting *Straw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)); *see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (discussing the "heavy burden" that a plaintiff assumes when asserting a claim of supervisory liability).

To satisfy the first element, a plaintiff must show that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (internal quotation marks omitted); *see also Slakan*, 737 F.2d at 373 (noting that a plaintiff "cannot satisfy his burden of proof by pointing to a single incident or isolated incidents"). With respect to the second element, "a plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* (internal quotation marks omitted). Finally, as to the third element, "[c]ausation is established when the plaintiff demonstrates an affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw*, 13 F.3d at 799 (internal quotation marks and citations omitted).

Here, Holloman's complaint is devoid of allegations that would support any of these elements. Holloman does not plausibly allege that Anderson or Hall had actual or constructive knowledge that Watkins or other officers were engaging in conduct that posed a pervasive risk of constitutional injury, let alone that Anderson or Hall continuously failed to act in the face of "documented widespread abuses." *Wilkins*, 751 F.3d at 226. Moreover, Holloman does not plead any facts showing a causal connection between Anderson or Hall's alleged inaction and Holloman's constitutional injury. Holloman's "conclusory assertions against [Anderson and Hall] do not state a cognizable claim of supervisory liability under § 1983." *See Carter v. Ely*,

- 10 -

No. 7:20-cv-00713, 2022 WL 801585, at *4 (W.D. Va. Mar. 15, 2022) (collecting cases).

Accordingly, Holloman's claims against Anderson and Hall will be dismissed.

## IV.    CONCLUSION

For the reasons stated above, the court will grant the Moving Defendants' motion to dismiss.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 24th day of July, 2026.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE